Jon THORP, Appellant,

v.

Alisha THORP, Respondent.

No. ED 97995.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 15, 2013.

Susan K. Roach, W. Edwin Roussin, Clayton, MO, for appellant.

Karen Pittman–Pace, St. Louis, MO, for respondent.

ROY L. RICHTER, Judge.

Jon Thorp ("Father") appeals from the trial court's judgment of November 8, 2011, dissolving his marriage with Alisha Thorp ("Mother") and entering a child custody and support award for their minor child ("Minor"). The trial court's judgment granted joint physical custody to the parties, with Mother as the residential parent, and ordered Father to pay child support to Mother. We dismiss the portion of the appeal from the trial court's judgment setting aside the default judgment and affirm the judgment of dissolution.

## I. BACKGROUND

The parties married on May 30, 2006. Prior to their marriage, on December 2, 2004, a son was born, both parties agreeing that they are the parents of Minor. From the outset of the marriage, marital strife and disagreements were common-

place. In April 2008, the parties separated for the final time.

On July 18, 2008, Father filed a petition for dissolution of marriage in the circuit court of Saint Louis County. Mother, believing that the trial court would enter an order granting joint legal and physical custody of Minor, as agreed to by the parties, failed to respond to the Petition. The trial court entered a default judgment on March 4, 2009, incorporating Father's proposed parenting plan which provided that the parties would serve as joint legal custodians, but that Father serve as the sole physical custodian and residential parent of Minor. Regardless of the March 4, 2009 default judgment, the parties continued to exercise custody on a week-to-week basis, as they had done since their April 2008 separation. This week-to-week custody arrangement continued until Father enrolled Minor in preschool near his residence[1] and informed Mother that he was enforcing the March 2009 default judgment. Thereafter, on November 10, 2009, Mother filed her motion to set aside the default judgment. The trial court granted Mother's motion on February 1, 2010, and litigation commenced regarding the dissolution of marriage and custody of Minor.

In the interim time period between the March 4, 2009 default judgment and the February 1, 2010 motion to set aside the default judgment, Father began new employment as a firefighter with the Mehlville Fire Department on September 21, 2009.

Over the course of the next two years, and several separate days of trial, litigation continued. The trial court entered its written Judgment on November 8, 2011. In entering its Judgment, the trial court incorporated the guardian ad litem's parenting plan, granting joint legal and physi-

cal custody to the parties, and ordering Mother as the residential parent. Further, the trial court rejected both parents' Form 14s and completed its own. The trial court's Form 14 calculated Father's gross income as $5,580 per month, including the average monthly salary ($799.00) Father received from his secondary employment with Missouri–1 DMAT. The presumed child support amount (Line 12) calculated Father's child support amount to be paid to Mother every month at $761. However, the trial court adjusted the presumed child support amount, adding $64 per month, for a total of $825 per month, on the basis that Father was afforded the yearly dependent tax exemption. This appeal follows.

## II. DISCUSSION

Father raises eight points on appeal. In his first point, Father alleges the trial court erred in setting aside the March 4, 2009 default judgment, in that Mother failed to demonstrate good cause or a meritorious defense.

Second, Father claims the trial court erred in finding that Father's 457 deferred benefit plan with his employer Mehlville Fire Department was marital property, because Father asserts that the deferred benefit plan was acquired after a decree of legal separation, and, thus, should be classified as separate property. Therefore, Father argues that the trial court should not have awarded Mother 50% of the 457 deferred benefit plan.

In points III, IV and V, Father asserts the trial court erred in granting the parties joint physical custody, in ordering Mother as the residential parent, and accepting the guardian ad litem's parenting plan, respectively. In all three points, Fa-

---

1. Mother, residing forty-five (45) minutes from Father's residence and Minor's pre-school, found it difficult to transport Minor to and from during her dates of custody.

ther argues the judgment is against the weight of the evidence and not in the best interests of Minor, because the evidence establishes that Father should have been granted sole physical custody, been ordered as the residential parent, and the trial court should have adopted the Father's parenting plan (requesting sole physical custody and ordering Father as the residential parent).

In his sixth point, Father contends the trial court erred on its Form 14 calculation by including in Father's monthly gross income $799 Father received, on average, from his secondary-employment. Father argues the inclusion of said income was against the weight of the evidence because the income was inconsistent and analogous to a bonus.

Seventh, Father alleges the trial court abused its discretion in awarding Mother attorney's fees as it, too, was against the weight of the evidence, in that there were no unusual circumstances established to justify the award of attorney's fees.

Last, Father contends that the trial court's deviation and increase of child support payments from the presumed child support amount calculated on the Form 14, was an abuse of discretion and against the directions of Form 14, because the trial court should not have accounted for Father's ability to claim the dependent tax exemption.

### Point I—Default Judgment

■ To begin, Father alleges the trial court erred in setting aside the March 4, 2009 default judgment because Mother failed to establish good cause or a meritorious defense. We dismiss Point I for lack of jurisdiction.

■ A notice of appeal must be filed not later than ten days after the judgment or order appealed from becomes final. *See* Rule 81.04(a). The timely filing of a notice of appeal is a jurisdictional requirement. *Popular Leasing USA, Inc. v. Universal Art Corp. of New York*, 57 S.W.3d 875, 877 (Mo.App. E.D.2001). Thus, if a notice of appeal is untimely, an appellate court lacks jurisdiction and must dismiss. *Id.*

■ "A motion [to set aside a default judgment] filed under this Rule 74.05(d) ... is an independent action...." *See* Rule 74.05(d). Accordingly, a judgment granting or denying a motion to set aside a default judgment is a final judgment eligible for immediate appellate review. *Gordon ex rel. Martin v. City of St. Louis*, 186 S.W.3d 395, 397 (Mo.App. E.D.2006). Therefore, Father was required to file his appeal challenging the trial court's setting aside the default judgment not later than ten days after the judgment became final. *Id.*

Here, the trial court set aside the default judgment on February 1, 2010. This judgment became final thirty days after its entry since no authorized after-trial motions were filed. *See* Rule 81.05(a)(1). As such, Father had until Monday, March 15, 2010, to file his appeal challenging the trial court's setting aside of the default judgment. However, Father did not file his appeal until January 27, 2012.

Accordingly, finding that Father's notice of appeal was untimely with respect to Point I, pursuant to Rule 81.04, this Court is without jurisdiction and must dismiss Point I.

### Point II—Retirement Account

Next, Father asserts that his 457 deferred benefit plan ("retirement plan") with his employer, Mehlville Fire Department, is property acquired after a default judgment. Specifically, Father claims that his retirement plan began on the first day of his employment with Mehlville Fire Department (September 21, 2009) which was, more than five months after the default

judgment was entered (March 4, 2009), dissolving the parties' marriage. Therefore, Father argues that this retirement plan should be considered separate, not marital property, and that the trial court erred in awarding Mother 50% of said retirement plan.

## Standard of Review

■ Generally, "[t]he standard of review for appellate action in a dissolution of marriage is that we will affirm the trial court's judgment of dissolution unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Richmond v. Richmond*, 164 S.W.3d 176, 178 (Mo.App. E.D.2005).

■ "A trial court possesses broad discretion in identifying marital property." *Absher v. Absher*, 841 S.W.2d 293, 294 (Mo.App. E.D.1992). Under Missouri law, property acquired by either spouse during the marriage is presumed marital property, but this presumption may be overcome by a showing that the property is nonmarital. *See* Sections 452.330.2, 452.330.3. "[T]he burden is on the spouse who claims that the property is separate to overcome the presumption of marital property and show that it falls into one of the exceptions listed" in Section 452.330.2 *Kahn v. Kahn*, 839 S.W.2d 327, 332–33 (Mo.App. E.D.1992) (quoting *True v. True*, 762 S.W.2d 489, 492 (Mo.App. W.D.1988)). The complaining party must prove that the property is separate property by clear and convincing evidence. *Comninellis v. Comninellis*, 99 S.W.3d 502, 507 (Mo.App. W.D.2003). However, even if the trial court erred in classifying property, "[i]t is well settled that the mere erroneous declaration of what is or is not marital property, where the decree is nonetheless fair, will not require a reversal." *Burk v. Burk*, 936 S.W.2d 144, 145 (Mo.App. S.D. 1996) (quoting in part *In re Marriage of Garrett*, 654 S.W.2d 313, 316 (Mo.App. S.D.1983) (internal quotations omitted)). The exceptions enumerated in Section 452.330.2 are:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property by gift, bequest, devise or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

*See* Section 452.330.2.

## Discussion

Here, Father asserts that his retirement plan was acquired after the parties' dissolution. However, the order setting aside a default judgment leaves the case pending for further and final action on the merits. *Spino v. Bhakta*, 174 S.W.3d 702, 708–09 (Mo.App. W.D.2005). After the March 4, 2009 default judgment was set aside by the trial court on February 1, 2010, the parties were restored to their original positions as though the default judgment had never been entered. *Berry v. F & S Fin. Mktg., Inc.*, 271 Va. 329, 626 S.E.2d 821, 823 (2006).

Thus, the March 4, 2009 default judgment does not determine whether the parties were legally separated because it is as if it never occurred. Moreover, Father has failed to demonstrate any of the other exceptions to rebut the presumption of

marital property. The trial court's award of 50% of Father's retirement plan to Mother is affirmed since it was marital property as this Court finds no evidence that such a division was not "just, fair, and equitable under the particular circumstances of the parties." *In re Marriage of Strelow*, 581 S.W.2d 426, 429–30 (Mo.App. E.D.1979). Point two is denied.

## Points III, IV and V—Child Custody

Points III, IV and V, all pertain to the trial court's child custody judgment and, as such, we address these points concurrently.

In Point III, Father argues the trial court's grant of joint physical custody was against the weight of the evidence and law, in that Father should have been granted sole physical custody. Similarly, in point IV, Father contends the trial court erred in ordering Mother as the residential parent as it, too, was against the weight of the evidence. Correspondingly, in his fifth point Father argues the trial court's acceptance of the guardian ad litem's (GAL) parenting plan (which suggested joint physical custody and Mother as the residential parent) was in error. Specifically, Father claims an award of joint physical custody, ordering Mother as residential parent, and acceptance of the GAL's parenting plan were in error because Father was able to provide a better home environment, his profession and work schedule as a firefighter did not interfere with his ability to care for Minor, he was more likely to ensure Minor had meaningful contact with Mother, and granting the opposite (i.e., sole physical custody to Father and ordering Father as residential parent) would be in the best interest of the child. We disagree on all three points.

### Standard of Review

Appellate review of these three points is governed by the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976): the judgment of the trial court must be affirmed unless it is unsupported by substantial evidence, or is against the weight of the evidence, or misstates or misapplies the law. *Id.* at 32. However, "[a] trial court's custody determination is afforded greater deference than other decisions." *McGahan v. McGahan*, 237 S.W.3d 265, 269 (Mo.App. E.D.2007). Regarding custody issues, we grant the trial court broad discretion and do not reweigh the evidence, even if the evidence may have supported another conclusion. *Dunkle v. Dunkle*, 158 S.W.3d 823, 832–33 (Mo.App. E.D.2005). Accordingly, this Court will affirm a trial court's child custody determination unless we are "firmly convinced" that the welfare of the child requires an alternative arrangement. *Siegfried v. Remaklus*, 95 S.W.3d 107, 111 (Mo.App. E.D.2001).

When this Court reviews whether a custody determination is against the weight of the evidence, "we proceed under the presumption that the trial court reviewed all evidence and based its decision on the child's best interests." *Mahoney v. Mahoney*, 162 S.W.3d 512, 517 (Mo. App. W.D.2005) (quoting in part *Wright ex rel. McBath v. Wright*, 129 S.W.3d 882, 884 (Mo.App. W.D.2004) (internal quotations omitted)). Thus, we consider all evidence and any reasonable inferences therefrom in the light most favorable to the judgment, disregarding contradictory evidence. *Ratteree v. Will*, 258 S.W.3d 864, 868 (Mo. App. E.D.2008). If evidence does not "clearly preponderate in favor of either parent, *we will reverse the trial court's award only when there has been an abuse of discretion*" *Gulley v. Gulley*, 852 S.W.2d 874, 876 (Mo.App. E.D.1993) (emphasis added).

### Discussion

█ The trial court determined the custody arrangements for Minor upon consideration of his best interests and all relevant factors, including the eight factors listed under Section 452.375.2. In fact, the trial court extensively addressed each of those eight factors in its Judgment. The trial court accepted the GAL's parenting plan, affording joint physical custody and ordering Mother as the residential parent, because:

the physical custody schedule proposed by the GAL present[ed] the best practical solution to the conflict between the parents. The GAL's plan provides that the child will have substantial custody time with each of his parents under a plan that maximizes the time that he has with each parent but recognizes the limits that exist because of the work schedules of the parents and the school requirements of the child.

On appeal, the thrust of Father's argument is the trial court should or should not have weighed certain evidence or factors when determining custody arrangements. For instance, Father believes that the trial court placed too much weight on his profession as a firefighter and not enough weight on the fact that Father owns his own home or would be available during the day multiple times a week due to his unorthodox work schedule.[2] Father is requesting that this Court reweigh certain evidence and determine custody in a different manner than the trial court. However, while the evidence may have supported an alternative custody determination, it is not the duty of this Court to substitute our judgment for the judgment of the trial court. The trial court not only extensively addressed the eight factors under Section 452.375.2, but also provided numerous reasons for the ordered custody arrangements, including: the availability of Mother's family, living in the same household, to assist in Minor's educational and speech development; and the fact that Father knows his work schedule for the entirety of the following year by December, allowing for Mother and Father to plan far in advance and ensure Minor is provided frequent, meaningful, and continuous contact with each parent.

█ Finally, this Court believes it is important to address Father's contention that the trial court's only basis for Points III, IV, and V was the fact that he was a firefighter and had an abnormal work schedule (i.e., a work schedule that was not 9 a.m. to 5 p.m.). As demonstrated by *Gulley v. Gulley,* 852 S.W.2d 874 (Mo.App. E.D.1993), a parent's employment as a firefighter does not solely prevent that parent from being awarded primary physical custody. *Id.* at 876 (affirming an award of primary physical custody to the father, a firefighter, who worked three 24-hour shifts every nine days and also worked part-time as a paramedic). Nevertheless, our courts have routinely held that the best interests of the child are of paramount concern when determining child custody arrangements, and the hours and schedules worked by a parent may be a factor in that determination. *Luther v. Vogel,* 863 S.W.2d 902, 904 (Mo.App. E.D. 1993) ("In a child custody proceeding it is the affirmative duty of the trial court to enter a decree that is in the best interest of the child; the best interest of the parents are secondary"); *see e.g., Abbott v. Perez,* 140 S.W.3d 283 (Mo.App. E.D.2004) (affirming the trial court's judgment grant-

---

2. As is common for firefighters, Father's work schedule entails working ten 24-hour shifts a month.

ing mother primary physical custody of the minor child based upon numerous factors, including the fact that father, a plastic surgery resident, worked approximately 80 hours per week); *Jobe v. Jobe,* 708 S.W.2d 322 (Mo.App. S.D.1986) (abrogated on other grounds) (awarding custody of both children to mother based upon numerous factors, including the regular work hours mother worked everyday, permitting mother to be with the children more than the father's work schedule which required father to be on call one weekend a month and work late at least one night a week); *In re Marriage of Griswold,* 623 S.W.2d 560 (Mo.App. W.D.1981) (the court affirmed a judgment changing custody to the father where, in order to fulfill the obligations of her work, the mother was required to leave her home Monday usually returning late Thursday); *Hartig v. Hartig,* 738 S.W.2d 160 (Mo.App. E.D.1987) (affirmed a grant of custody to the father where the mother worked as a waitress from 5 p.m. until midnight or later, while the father, employed as a welder, was living with his mother, and his job would permit him to care for the children on evenings and weekends). Here, the trial court did not err in accounting for Father's work schedule as the trial court did so in order to determine child custody arrangements that were in the best interests of Minor.

We give great deference to the trial court, especially regarding child custody. Father offers and we find no evidence that "firmly convinces" us that the welfare of Minor requires a different custody schedule than that ordered by the trial court. There is no evidence that clearly tips the scales in favor of one parent, and, thus, as discussed *supra,* we do not find the trial court abused its discretion. Points III, IV and V are denied.

## Point VI—Determining "Gross Income" for purposes of Form 14

Father contends the trial court erred on its Form 14 calculation by including in Father's monthly gross income $799 Father received, on average, from his secondary-employment with Missouri–1 DMAT ("DMAT").

### Standard of Review

Generally, "[t]he standard of review for appellate action in a dissolution of marriage is that we will affirm the trial court's judgment of dissolution unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Richmond v. Richmond,* 164 S.W.3d 176, 178 (Mo.App. E.D.2005). The trial court's inclusion or exclusion of earnings from secondary employment benefits is discretionary. *Bridgeman v. Bridgeman,* 63 S.W.3d 686, 690 (Mo.App. E.D.2002). Thus, our review is abuse of discretion. *Id.* at 691.

### Discussion

■ Income, for purposes of computing the presumed child support amount, is defined as "a financial benefit or money received by a parent that could have a positive impact on the parent's ability to support the parent's child." *See* Mo. R. Civ. P. Form 14, Line 1, Comment A. The directions for Form 14 state that, "[o]vertime compensation, bonuses, *earnings from secondary employment,* recurring capital gains ... may be included, in whole or in part, in 'gross income' in appropriate circumstances." *See* Mo. R. Civ. P. Form 14, Line 1, Direction (emphasis added). However, the directions do not define what constitutes "appropriate circumstances." Accordingly, "[a] trial court has a difficult task in determining the monthly gross income of a party who is compensated by means other than an established, recurring

salary." *Harrison v. Harrison*, 871 S.W.2d 644, 646 (Mo.App. S.D.1994). While the trial court may not ascribe to speculative evidence, it may consider the evidence presented at trial that is "substantive and probative." *Id.*

When determining whether to include earnings from secondary employment, and, if so, the appropriate amount, Comment C to Form 14 provides that the court "*s hall consider all relevant factors, including*" the following five factors:

(1) The consequence of exercise by the parent of periods of temporary physical custody or visitation with the children who are the subject of this proceeding on the parent's ability to receive overtime compensation or earnings from secondary employment;

(2) The motivation of the parent in working overtime, including whether overtime was a condition of employment, or in working secondary employment during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;

(3) The amount of overtime compensation and earnings from secondary employment received by the parent during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;

(4) The realistic expectation that the parent will continue to receive the amount of overtime compensation and earnings from secondary employment received during the three years, or such time period as may be appropriate, immediately before the beginning of the

proceeding and during any other relevant time periods; and

(5) The number of additional dependents for whom the parent is financially responsible, whether or not there is an existing court or administrative order under which the parent is paying or receiving support.

*See* Mo. R. Civ. P. Form 14, Comment C (emphasis added); *see e.g., Bauer v. Transitional Sch. Dist. of City of St. Louis,* 111 S.W.3d 405, 408 (Mo. banc 2003) ("Generally, the word 'shall' connotes a mandatory duty").

First, we must respond to Father's contention that this income should be analyzed under the rubric of a "bonus" since the income is not guaranteed because Father is only paid when DMAT requests his labor. The evidence, viewed in the light most favorable to the trial court's judgment, demonstrates that this income has been consistent for a number of years. For instance, Father has been employed by DMAT since 2006, received payments of $8782 and $10,407 during 2008 and 2009, respectively, and has not indicated or proffered any evidence that he will cease his employment with DMAT. The $799 average monthly payment from DMAT is much more like "salaries" and "wages" rather than a bonus. *See* Mo. R. Civ. P. Form 14, Line 1, Direction. As such, contrary to Father's request, this Court, as did the trial court, views Father's income received from DMAT as income from secondary employment.

Here, the trial court included Father's income from his secondary employment on the basis that $799 was the average Father earned per month throughout the past two years (2008 and 2009) from said employment.[3] The only factor with which this

---

**3.** While there was testimonial evidence presented that Father's income from DMAT for 2010 was significantly less than the previous

two years, there was conflicting testimony as to the correct dollar figure. However, on appeal, Appellant failed to include any evi-

may comply is factor (3) to Comment C. While the trial court did not making written findings as to all five factors under Comment C[4], this Court, nevertheless, finds that the evidence on appeal reveals that the trial court did not abuse its discretion by including Father's income from his secondary employment. Father offered no evidence that his employment with DMAT is likely to change, nor did Father offer any evidence that his motivation to continue his employ with DMAT has changed. Moreover, Father never indicated that his secondary employment has interfered with his custody arrangements. In fact, to the contrary, Father stated that when he has custody of Minor, he does not have to or need to work at DMAT. Therefore, viewing the evidence in the light most favorable to the trial court's judgment, we do not find that the trial court abused its discretion by including income received from Father's secondary employment into Father's Gross Income on Form 14. Point VI is denied.

## Point VII—Attorney's Fees

In his seventh point, Father alleges the trial court abused its discretion in awarding Mother attorney's fees. We disagree.

### Standard of Review

■■■■ "Generally speaking, parties to a domestic relations case are responsible for paying their own attorney's fees." *Ethridge v. Ethridge*, 239 S.W.3d 676, 684 (Mo.App. E.D.2007). However, the trial court is vested with broad discretion in awarding attorney's fees and the award will be reversed only upon a finding of an abuse of discretion. *In re Marriage of*

*Brown*, 310 S.W.3d 754, 758 (Mo.App. E.D. 2010). Accordingly, this Court presumes an award of attorney's fees to be correct. *Bryant v. Bryant*, 351 S.W.3d 681, 691 (Mo.App. E.D.2011). Thus, the burden of demonstrating an abuse of discretion is on the complaining party who must show the trial court's judgment was "against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Short v. Short*, 356 S.W.3d 235, 248 (Mo.App. E.D.2011).

### Discussion

■■■■ Section 452.355.1 provides that the trial court may award a party his or her attorney's fees "after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action." *See* Section 452.355.1. The inability of one spouse to pay attorney's fees is not required in awarding fees, yet, one spouse's greater ability to pay the other's attorney's fees is sufficient to award fees. *Workman v. Workman*, 293 S.W.3d 89, 102 (Mo.App. E.D.2009).

The trial court found that both parties, during the pendency of the case, took positions that increased the cost of litigation. Further, the trial court defined the parties' financial circumstances as "disparate," (Line 3 of Form 14 indicated that Father's proportionate share of the Gross Income was 78.2% compared to Mother's 21.8%). Thus, the trial court's findings indicated Father had a greater ability to pay $15,000 of Mother's $45,000 attorney bill. The trial court's award was due in part to Father's higher income, his relatively low liv-

---

dence in the Legal File indicating Father's 2010 income from DMAT. Thus, this Court has no evidence available to hold that the trial court abused its discretion in only accounting for the income received in 2008 and 2009.

4. When confronted with whether to include or exclude bonuses or income from secondary employment in Gross Income on Form 14, we encourage trial courts to make written findings in accordance with Comment C.

ing expenses, and the fact that his $48,000 attorney's fees were paid in full. In fact, Father, himself, admitted in his brief that he has a higher ability to pay than Mother. Because, "[o]ne spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse," we cannot find that the trial court abused its discretion in awarding Mother attorney's fees in the sum of $15,000. *In re Marriage of Maninger*, 106 S.W.3d 4, 13 (Mo. App. E.D.2003). Point VII is denied.

## Point VIII—Considering Ramifications of Tax Exemptions to Increase Child Support

Finally, Father's last point alleges the trial court's deviation and increase of child support payments from Form 14, because of Father's ability to claim the dependent tax exemption, was an abuse of discretion and against the directions of Form 14. We do not agree with Father.

### Standard of Review

Generally, "[t]he standard of review for appellate action in a dissolution of marriage is that we will affirm the trial court's judgment of dissolution unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Richmond v. Richmond*, 164 S.W.3d 176, 178 (Mo.App. E.D.2005).

In determining a proper child support amount, Rule 88.01, together with Section 452.340, directs the trial court to apply a two-step analysis. *Garner v. Garner*, 973 S.W.2d 513, 515 (Mo.App. E.D.1998); *see also* Rule 88.01; Section 452.340. First, the trial court is required to calculate the child support amount pursuant to Civil Procedure Form 14 ("Form 14"), either by accepting one of the parent's Form 14 calculations or by performing its own Form 14 calculation. *Malawey v. Malawey*, 137 S.W.3d 518, 526–27 (Mo.App. E.D.

2004). This first step is a "mathematical calculation[,] the mandatory use of which insures that the child support guidelines will be considered in every case[.]" *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App. W.D.1996). Second, the trial court then considers whether the presumed Form 14 amount is "unjust or inappropriate" after considering all relevant factors. *Garner* 973 S.W.2d at 515. Here, in this second step of the two-part analysis, the trial court is permitted to "exercise its broad and sound discretion in the final determination of child support awards." *Woolridge*, 915 S.W.2d at 379.

As such, broad discretion and flexibility is afforded to the trial court in fashioning child support payments. *Toomey v. Toomey*, 636 S.W.2d 313, 315 (Mo. banc 1982). "The determination of the amount of child support awarded pursuant to a dissolution of marriage rests within the sound discretion of the trial court." *Coit v. Coit*, 778 S.W.2d 344, 346 (Mo.App. E.D. 1989). In so determining, the trial court is "guided by [Form 14]'s directions for completion and *comments for use*, and the evidence in the case." *Woolridge*, 915 S.W.2d at 379 (emphasis added). However, this Court does not substitute its own judgment for that of the trial court's absent a manifest abuse of discretion. *Holmes v. Holmes*, 878 S.W.2d 906, 909 (Mo.App. E.D.1994). Further, we will not disturb an award of child support unless the evidence is "palpably insufficient" to support it. *Id.* (citing *Hogrebe v. Hogrebe*, 727 S.W.2d 193, 195 (Mo.App. E.D.1987)). Thus, this Court reviews the trial court's application of the two step analysis to determine if the child support award is supported by substantial evidence, the award is not against the weight of the evidence, and the award does not erroneously declare or apply the law. *Malawey*, 137 S.W.3d at 527; *see also Murphy v. Carron*,

536 S.W.2d 30, 32 (Mo. banc.1976). Subsequently, "we then review for an abuse of discretion with respect to the trial court's rebuttal review of its presumed child support calculation." *Malawey*, 137 S.W.3d at 527.

### Discussion

■ The presumption of the Form 14 guidelines amount as the correct support amount is rebuttable. *See* Rule 88.01(b); *see also State ex rel. Mosier v. Klein*, 83 S.W.3d 15, 16 (Mo.App. E.D.2002); *Searcy v. Searcy*, 85 S.W.3d 95, 99 (Mo.App. W.D. 2002) ("While the Form 14 amount carries a presumption of correctness, the trial court need not award that amount automatically"). In fact, Rule 88.01(a) mandates that a court consider "all relevant factors" in determining the correct amount of child support. *See* Rule 88.01(a). Accordingly, "[a] judgment awarding a greater child support amount than suggested by Form 14 is proper so long as the trial court makes a written finding on the record that the presumed child support amount is unjust or inappropriate after considering all of the relevant factors." *Klein*, 83 S.W.3d at 16. Here, the trial court made such a finding when it stated:

> However, the court finds that the presumed amount is unjust and inappropriate in this case at this time because it is appropriate that, unlike the presumed outcome assumed under the Form 14 tables, it is appropriate that Father be entitled to claim [Minor] as a dependant for taxes in each year because of the difference in the tax rates of the two parents. To allow Father the dependency exemption increases the overall funds available to provide for the child ... In light of the award of the exemption to Father, it is appropriate that the monthly child support be increased [from $761] to $825 per month.

In making this finding, the trial court did not abuse its discretion. In fact, the evidence supporting the trial court's award is sufficient to support such an award for numerous reasons.

First, the plain language of Section 452.340.9 does not limit the trial court to awarding a higher child support amount than that calculated on the Form 14 to only those factors listed in subsection 452.340.1. Rather, the plain and unambiguous language of the statute reads that a court may adjust a Form 14 calculation if said calculation would be unjust or inappropriate "after considering *all* relevant factors, *including* the factors set out in subsection 1 of this section." *See* Section 452.340.9 (emphasis added). To hold that a trial court may only consider those factors set forth in 452.340.1 in determining whether to adjust a Form 14 calculation would render the phrase "after considering all relevant factors" in Section 452.340.9 superfluous. *See e.g., Moore v. State*, 318 S.W.3d 726, 731 (Mo.App. E.D.2010) ("We presume the legislature did not intend to use superfluous, meaningless, and redundant language"). As such, if the trial court deems a matter as a relevant factor, regardless of it being included in subsection 1 of Section 452.340, which would lead to an unjust or inappropriate Form 14 calculation, then this Court will not substitute its judgment for that of the trial court's absent abuse of discretion.

The trial court deemed the award of the dependent tax exemption to Father as a relevant factor that would lead to an unjust or inappropriate Form 14 calculation. Thus, the trial court did not abuse its discretion in ordering Father to pay $64 more per month than calculated by the Form 14. In fact, over the course of a year, Father will be paying $1,092 more per year in child support while recognizing a $3,800 dependent tax exemption for Tax

Year 2012, pursuant to 26 U.S.C 152(a). Moreover, considering Father is the higher income earner, the ability to take the dependent tax exemption for Minor maximizes the tax benefits to both parties and Minor. Therefore, in order to properly meet the "financial needs and resources of the child[,]" it could be appropriate, and not an abuse of discretion, for the trial court to take the tax ramifications into account in determining a child support award. *See* Section 452.340.1(1).

Second, tax exemptions are or may be a relevant factor in determining the money available to pay support obligations. *A.V. v. G.V.*, 726 S.W.2d 782, 785 (Mo.App. E.D.1987). "The ability of a parent to claim his or her children as an exemption for income tax purposes is a factor in the financial resources of the parent." *Lincoln v. Lincoln*, 155 Ariz. 272, 746 P.2d 13, 17 (App.1987) (quoting *Morphew v. Morphew*, 419 N.E.2d 770, 776 (Ind.App.1981) (superseded on other grounds)). Thus, "it seems only reasonable that a trial judge should allocate the dependency exemption to the parent in the highest tax bracket, and then enhance (or reduce) the value of the cash child support payments to offset the value of the exemption." *Nichols v. Tedder*, 547 So.2d 766, 777 (Miss.1989); *see also Monterey Cnty. v. Cornejo*, 53 Cal.3d 1271, 283 Cal.Rptr. 405, 812 P.2d 586, 592 (1991) ("the effect of awarding the exemption to the noncustodial parent is to increase the after-tax spendable income of the family as a whole, which may then be channeled into child support or other payments.... Consequently, it is eminently reasonable for a trial court to allocate the dependency exemption to the noncustodial parent in the higher income bracket, and increase the child support payments to offset the cash value of the exemption").

Father relies on *Coble v. Coble*, 931 S.W.2d 206 (Mo.App. W.D.1996), for the proposition that a trial court cannot rely upon the ramifications of the allocation of tax exemptions in calculating the presumed child support amount. In that case, the trial court entered the mother's full order of protection against the father and prepared a Form 14, determining a monthly child support figure of $888.05. *Id.* at 207–08. On appeal, father argued that the trial court erred in its calculation of presumed child support in that it failed to consider the tax ramifications regarding the allowance of exemptions for the children. *Id.* at 208–09. The Western District held that the trial court correctly refrained from considering the economic impact of tax exemptions:

> The court was not *obligated to* consider the ramifications of the allocation of tax exemptions in calculating the presumed child support amount. Form 14, itself, does not provide for such consideration. Allocation of a tax exemption is a separate and distinct issue from child support in dissolution proceedings and evaluated like any other asset or property rather than as part of a support order.

*Id.* at 209 (emphasis added). However, the court's holding was limited to the fact that no authority in Missouri permitted a trial court to consider tax exemptions in calculating the presumed child support according to Form 14 "in *temporary support proceedings related to protection orders.*" *Id.* (emphasis added). In fact, that court explicitly made the distinction that the current proceeding was a petition for order of protection and not a dissolution proceeding. *Id.*

Father's reliance upon *Coble* is unwarranted as the present case concerns a dissolution of marriage, not an order of protection. Further, the *Coble* court noted, and we agree, that the trial court is not

obligated to take the tax ramifications into account in determining child support. Nevertheless, we find authority for a trial court to consider the ramifications of the allocation of tax exemptions in calculating a child support award, without abusing its discretion, *supra.* While Form 14 does not itself mandate consideration of tax ramifications upon a presumed child support amount, the "all relevant factors" test, pursuant to Section 452.340.9, permits a trial court to take such tax consequences into account. However, this Court finds it must be clear regarding its holding here:

> Because of the ever-increasing complexity of Form 14, the proliferation of Directions, Comments, Caveats, and Assumptions accompanying Form 14, and the steadily rising flow of case law addressing Form 14, this [C]ourt declines to place yet another mine in the legal minefield for trial courts to dodge.

*In re Marriage of Eskew,* 31 S.W.3d 543, 550 (Mo.App. S.D.2000). Instead, this Court shall review the trial court's adjustments of Form 14's presumed child support based upon the ramifications of tax exemptions and credits on an abuse of discretion standard.

Finding the trial court did not abuse its discretion in adjusting the presumed child support award, Point VIII is denied.

### III. CONCLUSION

For the foregoing reasons, we dismiss the portion of the appeal from the trial court's judgment setting aside the default judgment and affirm the judgment of dissolution.

ROBERT G. DOWD, JR., P.J., and ANGELA T. QUIGLESS, J., concur.