

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| S.P.S., BY THEIR NEXT FRIEND, E.W.S., AND E.W.S., INDIVIDUALLY, | ) ) ) | No. ED113100 |
| Respondents, | ) ) | Appeal from the Circuit Court of Gasconade County |
| vs. | ) ) | 24GA-DR00012 |
| K.A.E., | ) ) | Honorable Ada Brehe-Krueger |
| Appellant. | ) | Filed: July 8, 2025 |

Before James M. Dowd, P.J., Angela T. Quigless, J., and Lorne J. Baker, Sp. J.

## OPINION

This is a child custody dispute. Appellant K.A.E. (Mother) challenges the July 2024 judgment of paternity, custody, and child support in which the trial court found the parenting plan proposed by E.W.S. (Father) to be in the best interests of the parties' five-year-old child, S.P.S. That plan gave the parties joint legal custody, approximately equal custodial time, and designated Child's primary residence for educational purposes to be with Father. In June 2024, Mother moved from Hermann, Missouri, which was near Father's residence in Rhineland, Missouri, to Wardsville, Missouri, approximately fifty miles away.[1] At issue here is the court's

---

[1] "Courts are permitted to take judicial notice of geographical facts." *State ex rel. Bailey v. Davis*, 705 S.W.3d 568, 572 n.4 (Mo. App. W.D. 2024).

primary residence designation which implicated the school Child would attend and each parent's resulting commute time.

Mother claims the court's residence designation is against the weight of the evidence because, first, the overwhelming evidence favors Mother's parenting plan which designated her home in Wardsville as Child's primary residence. Second, that she provided substantial evidence that factors two and four of the best-interests-of-the-child analysis in section 452.375.2[2] favored her position and therefore the court's finding that those factor were *neutral* is against the weight of the evidence. Finally, Mother asserts that there was not substantial evidence supporting the court's findings with respect to factors three, five, and seven.

We affirm. Our standard of review requires that we give great deference to the trial court's custody determination and here the court's judgment was not against the weight of evidence, it was supported by substantial evidence, and the court did not abuse its discretion with respect to its best-interests-of-the-child determination.

**Background**

Mother and Father are the natural parents of Child who is currently six years old. Mother and Father did not marry, so prior to this dispute they did not have in place a custody or visitation order of the court. Instead, they voluntarily followed a custody schedule Mother created and Father agreed to. Mother and Father had generally co-parented peacefully until 2024 when communication friction surfaced.

So, on March 8, 2024, Father filed a petition seeking a declaration of his paternity, an order of custody and support, and joint legal and physical custody of Child. His proposed parenting plan suggested an equal-time custody schedule which alternated weeks and holidays.

---

[2] All statutory references are to RSMo (2016) unless otherwise stated.

Mother's parenting plan also proposed joint legal and physical custody, but her schedule gave Mother approximately sixty percent of the time with Child. And, again, to the issue *sub judice,* each party proposed its own residence as Child's primary residence for educational purposes.

The evidence adduced at the July 8, 2024 trial of this matter: Since Child's birth, Mother and Father lived in the Hermann, Missouri, area. Father resided in Rhineland, "across the [Missouri] river"[3] from Hermann, and Mother in Hermann. Both residences are within the Hermann school district where Child had attended preschool for the 2022-2023 and 2023-2024 school years. Mother's and Father's extended families also reside in the Hermann area and some of them have helped the parties with Child's care and upbringing. Child's pediatrician and dentist are located in Columbia, Missouri. At the time of trial, Child was set to begin kindergarten that fall of 2024.

In June 2024, just weeks before trial, Mother moved to Wardsville, Missouri, to be closer to her job as a pediatric operating room nurse at University Hospital in Columbia and to start a life with her fiancé, a Jefferson City physician, with whom Mother was expecting a child in November 2024. In July 2023, nearly one year before she moved, Mother told Father that she intended to move but did not provide any other details until May 2024. Wardsville is within the Blair-Oaks R-II School District.

Father owns a mechanical repair business in Rhineland and in February 2024, he moved into a new structure that he built which served as his residence and his workshop. Child's bed was in a nook in the living room wall. Father conceded that Child will need her own room and that he intended to expand his home for such purpose.

---

[3] *See Davis*, 705 S.W.3d at 572 n.4.

Upon Mother's move to Wardsville, she testified that her travel between Wardsville and Father's home in Rhineland is approximately forty-five minutes and between Wardsville and Child's school in Hermann, approximately an hour. Father's drive to Child's school is about fifteen minutes but to the Blair Oaks school proposed by Mother, nearly an hour. Father claimed that Mother's parenting plan would reduce his work hours and income due to the commute to and from Wardsville.

In her testimony, Mother made claims regarding Father's parenting: that "many times" Father was late for drop-offs and pick-ups; that sometimes Child returned from Father's looking unkempt – her hair unbrushed and her clothes too big or not weather-appropriate; and that when Father lived in a trailer, she found maggots on Child after a stay there. Overall, however, Mother wanted Child and Father to have a meaningful relationship and believed joint legal and physical custody was in Child's best interests.

The court adopted Father's proposed parenting plan designating his home in Rhineland as Child's primary residence for educational purposes. To reach its decision, the court reviewed section 452.375.2's best-interests-of-the-child factors. Mother disputes the court's findings generally and also specifically with respect to factors two, three, four, five, and seven. The court's findings follow:

The first factor – the wishes of the child's parents as to custody and their respective proposed parenting plans. Since both parties proposed joint physical and legal custody, the court considered this factor to be neutral.

Under the second factor – the needs of the child for a frequent, continuing and meaningful relationship with each parent and each parent's willingness to be involved – the court found that both Mother and Father were fit, willing, and able to perform their parenting roles. It

noted that although Mother had been primarily responsible for Child's schedule, appointments, enrollment in school, and activities, Father had also participated. Thus, the second factor was also neutral in its decision.

The court found the third factor – the interaction and interrelationship of Child with parents, siblings, and any other persons significantly involved in Child's life – favored Father's proposal. The court characterized as "unrealistic" Mother's testimony that Child would continue her close relationships with the parties' extended families given Mother's proposed custody schedule and her work schedule. Moreover, the court found that changing Child's school from Hermann to Blair Oaks would pose "an undue burden" since Child had already been attending school and participating in extracurricular activities in Hermann. Finally, the court recognized the arrival of Child's new sibling but maintained that its custody schedule would encourage that relationship while also securing the parent-child relationships that currently existed.

The fourth factor addresses which parent is more likely to allow the child frequent, continuing, and meaningful contact with the other parent. The court found this to be a neutral factor since both parents had generally worked together to accommodate the other's schedule.

The fifth factor requires the court to consider the child's adjustment to her home, school, and community. Because Mother had been in her new home only *one month* before trial, the court found not credible her testimony that Child had already adjusted well to her new residence, her new future schoolmates, and the suitability of Mother's home. At the same time, the court found it troubling that Father had yet to provide Child with her own bedroom but acknowledged and credited Father's stated intention to build her one. Thus, the court found that because "Child is clearly well-adjusted to the Hermann, Missouri, area …," the child's school attendance based on Father's residence was in her best interests.

Regarding the sixth factor, the mental and physical health of all individuals involved, the court found that neither party's behavior towards each other or to Child was of concern.

Finally, as to factor seven, which is the intention of either parent to relocate the principal residence of the child, the court weighed against Mother that she had relocated. Though Mother communicated her general desire to move to Father, she did not discuss her plans in much detail prior to moving. The court recognized that while Mother moved in good faith to be closer to her job, her proposed plan would reduce Father's custodial time. So, this factor favored Father. After balancing section 452.375.2's factors, the court adopted Father's proposed parenting plan.[4]

### Standard of Review

We review a child custody determination according to the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). That is, we will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Thorp v. Thorp*, 390 S.W.3d 871, 877 (Mo. App. E.D. 2013). "'We presume that the trial court considered all of the evidence,' and this would include … alleged contrary evidence …." *King v. King*, 533 S.W.3d 232, 235 (Mo. App. W.D. 2017) (quoting *Cox v. Cox*, 504 S.W.3d 212, 220-21 (Mo. App. W.D. 2016)). We view the evidence and its reasonable inferences in the light most favorable to the judgment. *S.C.J.M. v. B.J.N.S.*, 667 S.W.3d 673, 676 (Mo. App. E.D. 2023).

A trial court's custody determinations are afforded greater deference than other decisions and we do not reweigh the evidence even if the evidence may have supported another conclusion. *Thorp*, 390 S.W.3d at 877. We do not ignore the trial court's resolution of

---

[4] The eighth factor under section 452.375.2 considers the child's input but this factor was not at issue since there was no evidence as to Child's wishes.

conflicting evidence, and we defer to the court's ability to assess witness credibility. *Cox*, 504

S.W.3d at 221. Accordingly, this Court will affirm an award of child custody unless we are

"firmly convinced" that the judgment was not in the best interests of the child. *S.C.J.M.*, 667

S.W.3d at 675.

In considering whether a custody determination is against the weight of the evidence, "we

proceed under the presumption that the trial court reviewed all evidence and based its decision

on the child's best interests." *Thorp*, 390 S.W.3d at 877 (quoting *Mahoney v. Mahoney*, 162

S.W.3d 512, 517 (Mo. App. W.D. 2005)). "If evidence does not 'clearly preponderate in favor

of either parent, we will reverse the trial court's award only when there has been an abuse of

discretion.'" *Id.* (quoting *Gulley v. Gulley*, 852 S.W.2d 874, 876 (Mo. App. E.D. 1993)).

**Discussion**

The crux of Mother's first two points on appeal is that the trial court erred in how it

weighed the evidence. In her first point, Mother claims the trial court's decision was against the

weight of the evidence since the totality of the evidence supported her parenting plan. Second,

Mother proffers an against-the-weight challenge to the court's findings that factors two and four

were neutral because there is substantial evidence in favor of Mother's position on those factors.[5]

---

[5] An against-the-weight-of-the-evidence challenge presupposes the existence of sufficient
evidence to support the judgment. *Day v. Hupp*, 528 S.W.3d 400, 411 (Mo. App. E.D. 2017).
"The term 'weight of the evidence' refers to an appellate test of how much persuasive value
evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact." *Id.*
This standard of review "serves only as a check on the trial court's potential abuse of power in
weighing the evidence, and we will reverse the judgment only in rare cases, when we have a firm
belief that the judgment is wrong." *Id.* at 411-12. "To prevail on an against-the-weight-of-the-
evidence challenge, a litigant must show that the trial court could not have reasonably found,
from the trial record, the presence of a fact necessary to uphold the judgment." *Hurricane Deck
Holding Company v. Spanburg Investments, LLC*, 548 S.W.3d 390, 393 (Mo. App. S.D. 2018).
Thus, by bringing an against-the-weight challenge, Mother has conceded there is substantial
evidence to support the judgment.

In both points, Mother simply asks us to reweigh the evidence but that is not our role here. *Thorp*, 390 S.W.3d at 877.

*Thorp* elucidates our role. There, father claimed the trial court's designation of mother as the residential parent was against the weight of the evidence because father was able to provide a better home environment, his work schedule as a firefighter did not interfere with his ability to care for child, and he was more likely to ensure that child had meaningful contact with mother. *Id.* at 878. This Court held that the trial court's decision was not against the weight of the evidence because "while the evidence may have supported an alternative custody determination, it is not the duty of this court to substitute our judgment for the judgment of the trial court" and the trial court's judgment properly and extensively addressed section 452.375.2's factors and provided numerous reasons in support of its custody determination. *Id. Thorp* guides our decision here and is just one of a legion of similar cases.

The trial court here certainly could have adopted Mother's proposed plan. But, since there was plentiful evidence cited in the judgment supporting the court's adoption of Father's parenting plan, it is not our role to re-weigh the evidence and supplant the trial court's decision with our own. *Id.* at 877.

Nearly all of Mother's and Father's extended families (grandparents, aunts, uncles, and cousins) live in the Hermann area where Child has lived and where she has attended pre-school for two years. Remaining in the same school district provides Child with stability and consistency. Father's proposed schedule of alternating weeks gives each parent equal custody time. Moreover, with respect to factor two, even though Mother scheduled appointments and activities for Child, Father was also actively involved and wanted to play a significant role in Child's life. As for factor four, although Mother and Father ran into some communication issues

8

in 2024, there was evidence that they had successfully communicated for the five years prior. Therefore, the trial court's judgment was not against the weight of the evidence. *See id.* at 878.

In her third point, Mother asserts that there was not substantial evidence to support the trial court's findings with respect to factors three, five, and seven of section 452.375.2. We find this challenge also uncompelling. Factor three - the trial court found this factor favored Father because Child grew up in Hermann, went to preschool in Hermann, and both parties' extended families resided in the Hermann/Rhineland area. The court recognized that Child would soon have a sibling but concluded the alternating weeks' schedule would foster that new relationship. This is substantial evidence. *See Pasternak v. Pasternak*, 467 S.W.3d 264, 270 (Mo. banc 2015).

Factor five – child's adjustment to her home, school, and community – weighed in Father's favor because Child's extended families, on both sides, reside in the Hermann/Rhineland area and Child had already attended preschool in Hermann. Mother does not dispute any of this evidence but highlighted various advantages of her plan including that Child did not have her own bedroom at Father's. The court, however, found Father's testimony that he intended to build Child a bedroom to be credible, and we defer to that determination. *Cox*, 504 S.W.3d at 221. Thus, there is substantial evidence supporting this finding.

Lastly, factor seven considers whether either party intends to relocate their primary residence. Although Mother had already relocated, the court considered this factor because her relocation to Wardsville impacted Father's custodial time that he typically enjoyed. We find no fault with the trial court in this regard.

We conclude that the trial court's judgment demonstrates that it carefully weighed the testimony and evidence presented by both parties. Although there was certainly evidence that

9

supported Mother's plan, there was also substantial evidence that supported Father's and under our standard of review, we decline to disturb the trial court's judgment.

## Conclusion

For the reasons set forth above, we affirm.

_____
James M. Dowd, Presiding Judge

Angela T. Quigless, J., and
Lorne J. Baker, Sp. J., concur.