

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| SHAWN BITTERS, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD86502 |
| | ) | |
| DARRYL OLIVE, | ) | Opinion filed: May 28, 2024 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE KENNETH GARRETT, JUDGE**

Division Three: Cynthia L. Martin, Presiding Judge,
Mark D. Pfeiffer, Judge and Edward R. Ardini, Jr., Judge

Darryl ("Olive") appeals the judgment entered by the Circuit Court of Jackson County ("Trial Court") dissolving his marriage to Shawn Bitters ("Bitters"). He argues (1) it was an abuse of discretion and misapplication of law for the Trial Court to grant his counsel's motion to withdraw; (2) the Trial Court's award of attorney's fees in favor of Bitters was not supported by substantial evidence; and (3) the Trial Court's denial of an award of maintenance to Olive based on Olive having "not requested maintenance" from Bitters was not supported by substantial evidence. We affirm in part, reverse in part, and remand with instructions.

**Factual and Procedural Background**

Olive and Bitters were married in 2018. Bitters filed a Petition for Dissolution of Marriage on July 19, 2021, and an amended petition on September 17, 2021. The matter was scheduled for an uncontested dissolution hearing on October 5, 2021. However, on October 4, 2021, Olive filed a motion for a continuance "to see if the parties will be able to reach an agreement [on all issues]." The case was thereafter transferred to a contested dissolution docket. Olive filed his Answer and Counter Petition on October 19, 2021. In November of 2021, Olive discharged his first attorney and hired new representation.

In December of 2021, Bitters filed a Motion for Enforcement of Discovery "in connection with Petitioner's First Set of Interrogatories to Respondent, Statement of Marital and Non-Marital [sic] to Respondent, Response to Request for Production of Documents, and signed financial records authorization[.]" Shortly thereafter, Olive filed a Motion for Leave to File Response and Suggestions in Opposition to Petitioner's Motion for Enforcement of Discovery, requesting the Trial Court "extend his deadline to Respond to the Motion for Enforcement of Discovery out of time" because he needed additional time to gather documents. Olive's request was granted and the Trial Court ordered Olive to comply with the discovery requests by January 3, 2022.[1] Around this time, Olive's second attorney withdrew at Olive's request.

---

[1] The Trial Court extended this deadline to February 2022.

In February, the Trial Court docketed the matter for a bench trial on May 23, 2022. Three days before the trial was set to begin, Olive filed another Motion for Continuance alleging, in part, the following:

> 2. The Respondent wishes to continue this matter to update and exchange necessary discovery that could potentially aid the parties.
>
> 3. The Respondent further alleges that the parties have not yet attended mediation as it pertains to the dissolution matter and believes the parties could possibly resolve some issues through mediation.
>
> 4. The Respondent has safety concerns due to his vehicle being vandalized around and on the previous court dates. For this reason, among other issues, the Respondent believes that it is necessary to obtain a Court monitor for said hearing.
>
> 5. In addition to the Respondent requesting a Court monitor, the Respondent is working closely with [Person] from Rosebrooks and she is unable to attend this Court date with the Respondent.
>
> 6. The Respondent further states that a main unresolved issue is the home, however, despite the fact that the parties do not agree as to whether the property is marital or non-marital, an appraisal has not yet been obtained.
>
> 7. A Pre-Trial Conference was not held in this matter; therefore, these matters were not discussed prior.

The Trial Court granted the continuance, resetting the matter to August 11, 2022. Olive then filed a Motion for Exclusive Use and Possession of the Home alleging that Bitters had not been making the required monthly payments on the residence they had shared during

3

the marriage and that Olive has been notified that the mortgage for the home had been placed in forbearance by the "loan company due to nonpayment of the loan."[2]

In June of 2022, the Trial Court granted Olive leave to file an Amended Counter Petition for Dissolution of Marriage. In the amended petition, Olive requested Bitters pay his attorney's fees and alleged that he "is no longer able to support himself and therefore is requesting a reasonable sum of maintenance to be paid by the Petitioner to the Respondent."

On August 10, 2022, Olive requested his third continuance, indicating that Bitters had sent a settlement offer that Olive "[w]ished to discuss with his attorney." The Trial Court granted the motion and reset the matter for September 19, 2022. On August 23, 2022, Olive's third attorney filed a Motion to Withdraw stating that "Counsel and Respondent do not agree on the direction of this case." This motion was granted and, on September 1, 2022, Olive's fourth attorney ("Attorney D.B.") entered his appearance and immediately filed a Motion for a Continuance[3] asserting that he required additional time to prepare for trial as he was "in the process of obtaining Respondent's case file from his prior counsel." The Trial Court granted the continuance and reset the matter for November 9, 2022. Then, on October 26, 2022, Olive filed another Motion for a Continuance claiming that Attorney D.B. had been unable to obtain the case file from Olive's prior attorney and that Bitters's

---

[2] This motion was denied on June 16, 2022.

[3] This was Olive's fourth request for a continuance.

4

attorney had not responded to requests for copies of certain discovery responses. The Trial Court granted this motion and reset the case for February 27, 2023.

On November 23, 2022, Attorney D.B. filed a Motion to Withdraw alleging that "there has been a sudden and continuing breakdown in communication between counsel and Respondent which has caused irreconcilable differences." He also pointed to the Attorney Client Fee Agreement between Olive and his counsel that explained the reasons for which Attorney D.B. had the authority to withdraw from representation.[4] Olive received a copy of the motion to withdraw. Five days later, the Trial Court granted Attorney D.B.'s motion by docket entry:

> Coming on to be heard this day is the Motion for Withdraw of Movants, [Attorney D.B.] and [law firm], from which the Court considered the pleading and arguments made therein, and finds that good cause has been shown and that leave is

---

[4] The portion of the fee agreement that Attorney D.B. cited in his motion states as follows:

> Client agrees to be truthful with Law Firm, to cooperate, to keep Law Firm informed of any information or developments which may come to Client's attention, to abide by this agreement and to pay Law Firm's bills on time. Further, while it is impossible to predict the course of a representation, it may be important for Law Firm to contact Client immediately, or upon short notice, to confer with Client regarding the status of Client's case. An inability to do so may result in Client's case being prejudiced and detrimentally affect the outcome of the case. Accordingly, Client agrees to keep Law Firm informed of Client's current address, telephone number and whereabouts. For example, if Client leaves town on business or vacation, Client agrees to notify Law Firm before leaving of the expected duration of the trip and agrees to provide his/her contact information during this period. Law Firm has the right at their discretion to withdraw from Client's case if Client misrepresents or fails to disclose material facts to Law Firm, if Client fails to follow the advice of counsel, fails to keep up with their financial obligations as contained herein, or for any other reason.

granted for Movants to withdraw as Attorneys of Record for Respondent, Darryl Olive, Jr., in the above-captioned matter.

The trial was conducted on February 27, 2023. Olive appeared without counsel and requested a continuance.[5] The Trial Court denied Olive's request stating that the matter had already gone well beyond "the [Time] Standards by the Supreme Court and by court operating rules." Evidence was presented regarding the designation and value of marital and non-marital property. Bitters confirmed his current employment as an associate professor and provided testimony about what he believed to be Olive's employment status. He also explained that he had incurred $14,442.50 in attorney's fees prior to trial, and expected to incur an additional $3,500. Olive presented conflicting information about his employment status. He first claimed he was unemployed due to "mental distress" as well as a "criminal record" related to an order of protection that had been obtained by Bitters against Olive during the pendency of the dissolution proceeding.[6] Olive also explained that he owned a business where he earned "limited money" because he was being "blocked from having access to all of the things [he] needed to run that business."

The Trial Court questioned Olive about valuations of marital and non-marital property prompting Olive to raise concerns about certain information that he believed was inaccurate or outdated. Olive attempted to update or clarify some of the information and

---

[5] Olive claimed to have requested a continuance on February 13, 2023, however this Court can find no support for this assertion in the record. In fact, the docket sheet reveals no filings by Olive between the date Attorney D.B. was granted leave to withdraw through the February 27, 2023 trial date including any filing by Olive contesting or, in any manner, challenging the Trial Court's order granting Attorney D.B.'s motion to withdraw as Olive's counsel.

[6] A Temporary Order of Protection was entered against Olive on July 15, 2021. This was replaced by a Full Order of Protection on March 3, 2022, which remained in force until August 30, 2022.

the Trial Court offered that "if there's anything new, you can hire an attorney and we can go down that road a little later[.]" The record provides no indication that Olive accepted the Trial Court's invitation by subsequently retaining counsel for the purpose of providing additional information.

The Trial Court's Judgment Entry and Decree of Dissolution of Marriage was entered on April 25, 2023. The Trial Court made the following findings relevant to this appeal: Bitters is employed, receiving a monthly income of $6,333.09; Olive "presented no evidence as to what his monthly income is or where he is employed[;]" Bitters "waived his request for maintenance from [Olive][;]" Olive "has not requested maintenance from [Bitters]. [Olive] is not entitled to receive periodic or statutory maintenance from [Bitters]." Regarding attorney's fees, the Trial Court "considered attorney's fees and the factors set forth in Section 452.355, R.S.Mo. (1995), as amended, and concludes that [Olive] shall pay [Bitters's] attorney's fees . . . in the amount of $8,202.00." Additionally, the Trial Court designated the parties' home as marital property, ordering it to be sold with the net proceeds to be divided as follows: Olive – 68%; Bitters – 32%. The Trial Court ordered the attorney's fees award to be paid directly to Bitters's attorney from Olive's share from the sale of the marital home.

Olive filed a motion for a new trial, wherein he alleged the Trial Court committed error in granting Attorney D.B.'s motion to withdraw as Olive's counsel, arguing that Attorney D.B. had failed to include in the motion the date and time the motion would be heard by the Trial Court and that Olive had been denied any opportunity to oppose the motion because the Trial Court granted the motion, without a hearing, only five days after

7

it was filed, in violation of Local Rule 33.5.1, which provides a party ten days in which to file suggestions in opposition. Olive further argued that if he had notice of a hearing, "he would have come to the hearing and objected." He asserted that the lack of notice and hearing unfairly prejudiced him at trial. The Trial Court denied the motion for new trial, noting that Olive had employed five attorneys during the case and had been granted five continuances. The Trial Court explained:

> Given the totality of all these circumstances, including [Olive's] role in delaying the proceedings for a year and a half, his ample time to retain counsel, the time constraints placed by the Supreme Court, and the fact that the property distribution achieved in the judgment did not unduly favor either party, it was not an abuse of discretion for the Court to grant [Attorney D.B.'s] Motion for Withdrawal.

This appeal follows.

**Analysis**

Olive brings three points on appeal. His first point asserts that the Trial Court abused its discretion and misapplied the law in the granting of Attorney D.B.'s motion to withdraw. In his second point, Olive contends that the Trial Court's award of attorney's fees in favor of Bitters was not supported by substantial evidence. Olive's third point challenges the denial of an award of maintenance, arguing the Trial Court's finding that he had not requested maintenance from Bitters was not supported by substantial evidence.

*Point I – Motion to Withdraw*

Olive's first point asserts that the Trial Court abused its discretion and misapplied the law when it granted Attorney D.B.'s motion to withdraw, alleging violations of procedure set forth in the local rules of the Sixteenth Judicial Circuit. Olive contends that

8

Attorney D.B.'s motion to withdraw failed to include a notice of the date and time of the hearing on the motion as required by Local Rule 21.4.[7] He further complains that the Trial Court granted the withdrawal motion without waiting the ten-day period set forth in Local Rule 33.5.1[8] during which a party may raise its opposition to a motion and thereby "depriv[ed] Mr. Olive of any opportunity to contest the withdrawal[.]"

"Whether to allow trial counsel to withdraw is within the sound discretion of the trial court, and we review the trial court's action for abuse of discretion." *Bowman v. Prinster*, 384 S.W.3d 365, 370 (Mo. App. E.D. 2012) (internal quotes omitted). "A trial court abuses its discretion when the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Aston as Trs. for KALA Tr. v. DBK Tr., LLC*, 679 S.W.3d 584, 588 (Mo. App. E.D. 2023) (quoting *State v. Teter*, 665 S.W.3d 306, 318 (Mo. banc 2023)).

---

[7] Local Rule 21.4 provides that:

> [a]ny attorney seeking leave to withdraw shall file a written motion for leave to withdraw, containing the full address of the client. Such motion shall set forth the specific grounds for the relief sought. If the motion does not contain the written consent of the client, it must be served on the client along with a notice that there will be a hearing on the motion, and the date, time and place of such hearing. No attorney will be permitted to withdraw unless the client has been given written notification of the motion to withdraw and has been granted reasonable time to retain or have another attorney appointed.

[8] Local Rule 33.5.1 provides that "[w]ithin ten (10) days following service and filing of such motion, any party opposing the motion shall serve and file suggestions in opposition with citation of authorities and affidavits to be considered in opposition to the motion."

9

"Missouri courts have been reluctant to reverse a trial court's order granting an attorney permission to withdraw for failure to strictly comply with the technical requirements of local court rules when the deficiencies do not prejudice the party." *Aston*, 679 S.W.3d at 591; *see also Bolander v. City of Green City*, 35 S.W.3d 432, 437-38 (Mo. App. W.D. 2000). Prejudice means an alleged error "materially affecting the merits of the action." Rule 84.13(b).[9] We find that Olive has failed to establish the prejudice necessary to obtain the relief he now seeks.

We begin by observing that Olive's claim that he was deprived of "any opportunity to contest the withdrawal, which [he] would have done if given the opportunity," rings hollow. The record is substantially bereft of any support to Olive's assertion that he would have contested Attorney D.B.'s withdrawal. This is significant because to establish prejudice flowing from the Trial Court's grant of Attorney D.B.'s motion to withdraw, Olive must, at a minimum, show that if he had been given the chance, he would have argued to retain Attorney D.B. as his counsel.[10] At no time during the ninety-one days between the Trial Court's grant of Attorney D.B.'s motion to withdraw and the trial itself did Olive make any effort to have the Trial Court revisit the issue of Attorney D.B.'s withdrawal or, in any manner, indicate that it had been his desire that Attorney D.B. remain his counsel. In fact, Olive's only comments on the topic *during* that ninety-one-day period undermine

---

[9] All Rule references are to the Missouri Supreme Court Rules 2023.

[10] It logically follows that if Olive would not have opposed Attorney D.B.'s withdrawal as his counsel, then he can not claim to have suffered prejudice resulting from any of the alleged notice and procedural deficiencies upon which his claim of error is grounded.

his claim on appeal that he would have contested the withdrawal of Attorney D.B. Indeed, Olive pointedly attacked Attorney D.B. on the morning of trial stating that "[t]he reason for the continuance [request he was making] was due to [his previous attorney's] abusive and lack of professional standards ethically and legally with the case" and noted that he was working with the Office of Disability and the ACLU regarding "that matter." In fact, the first time Olive asserted that he would have objected to Attorney D.B.'s withdrawal was in his verified motion for new trial—*after* entry of the judgment that he now finds unsatisfactory—and the Trial Court was not required to credit that testimony. *See Copper v. Ringen*, 671 S.W.3d 409, 416 (Mo. App. W.D. 2023) (A trial court is free to believe all, some, or none of a witness's testimony.).

Olive additionally posits that he suffered prejudice because the granting of Attorney D.B.'s motion to withdraw directly resulted in him being unrepresented at trial. In support, Olive relies on *Bledsoe v. Bledsoe*, 244 S.W.3d 204 (Mo. App. E.D. 2008), *In re P.D.*, 144 S.W.3d 907 (Mo. App. E.D. 2004), and *Int. of K.A.S.E.*, 538 S.W.3d 399 (Mo. App. S.D. 2018). These cases are easily distinguishable from this matter. In *Bledsoe*, the Eastern District found that the attorney's notice to the appellant was insufficient because the attorney requested leave to withdraw on the morning of trial, while in chambers, and without the appellant present. 244 S.W.3d at 205-06. The trial court granted the attorney leave to withdraw, still while in chambers and without the appellant present, and the appellant was then forced to represent himself at trial that same day. *Id.*

*P.D.* involved the termination of parental rights. There, the trial court granted the mother's attorney's oral motion to withdraw on the day of the termination hearing. 144

S.W.3d at 914. Mother was not present at the hearing and the attorney claimed he could not contact her despite Mother's recent contact with the Division of Family Services. *Id*. The Eastern District found that the trial court erred in permitting the attorney's withdrawal on the day of the hearing "when combined with the denial of [a] motion for a continuance[.]" *Id*.

*K.A.S.E.* also involved an attorney's withdrawal on the day of a termination hearing. The hearing had been moved up from October to July, and there was no evidence that the parent was notified of that change. 538 S.W.3d at 402. Additionally, "the evidence was that [the parent] was not aware that her court-appointed attorney was withdrawing on the date of the hearing." *Id*. In reversing, the Southern District noted that "[t]he trial court sustained trial counsel's motion to withdraw on the day of the trial and proceeded to trial without giving Appellant an opportunity to obtain counsel." *Id*.

By contrast, in this matter, Attorney D.B.'s withdrawal was granted ninety-one days prior to trial and Olive provided no explanation to the Trial Court during that period for his failure to obtain new counsel. As with his claim that he desired for Attorney D.B. to remain as his attorney, Olive only belatedly asserted that he experienced difficulty retaining an attorney during the ninety-one-day period prior to trial *after* the Trial Court had entered its judgment. Moreover, Olive had a pattern of cycling through attorneys in this matter for which the Trial Court had granted four prior continuances to allow his new representation

12

additional time to prepare filings and for trial.[11] Additionally, the Trial Court offered Olive during the trial the opportunity to obtain an attorney for the purpose of updating information related to the parties' assets, debts, and other property but Olive made no effort to avail himself of that opportunity.

Despite any failure by the Trial Court to fully comply with applicable local rules relating to notice and procedure, Olive has failed to establish the prejudice necessary to succeed on this claim of error.

Point I denied.

*Point II and Point III – Judgment Not Supported by Substantial Evidence*

Points II and III claim that there was not substantial evidence to support aspects of the Trial Court's judgment. "On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it[.]" *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Id.* at 199. "Evidence has probative force if it has any tendency to make a material fact more or less likely." *Id.* When reviewing whether the trial court's judgment is supported by substantial evidence, we accept as true the evidence and inferences favorable to the judgment and disregard all contrary evidence. *Id.* at 200.

---

[11] The Trial Court granted Olive five continuances in total, however the first continuance was requested prior to the uncontested dissolution hearing "to see if the parties would be able to reach an agreement[.]"

<u>Point II – Award of Attorney's Fees</u>

In his second point, Olive asserts that the Trial Court erred in ordering that he pay a portion of Bitters's attorney's fees, arguing that the award was not supported by substantial evidence. Olive claims that "there was no evidence that Mr. Bitters could not pay his $8,202 in attorney fees or that Mr. Olive had the ability to pay those fees and the trial court found there was no evidence of Mr. Olive's monthly income or where he is employed."

"Trial courts have broad discretion in awarding attorney's fees pursuant to RSMo section 452.355.1."[12] *Pratt v. Ferber*, 335 S.W.3d 90, 98 (Mo. App. W.D. 2011). "We will only find that a motion court abused its discretion in awarding attorney's fees when the complaining party shows that the court's award was against the logic of the circumstances, and was so arbitrary and unreasonable as to shock the appellate court's sense of justice." *Id*. at 98-99. "While it is true that a judge is an expert on attorney's fees, an award of attorney's fees [ ] must be supported by competent and substantial evidence." *Hihn v. Hihn*, 235 S.W.3d 64, 69 (Mo. App. E.D. 2007). "Under section 452.355.1, the court may consider all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action." *Rallo v. Rallo*, 477 S.W.3d 29, 45 (Mo. App. E.D. 2015) (internal quotes omitted). "How the factors will balance" varies on a case-by-case basis. *Id*. The trial court is not confined to solely consider the parties' financial resources. *See In re Marriage of Geske*, 421 S.W.3d 490, 498 (Mo. App. S.D. 2013).

---

[12] All statutory references are to the Revised Statutes of Missouri 2016.

As an initial matter, we note that Olive's contention that "there was no evidence that Mr. Bitters could not pay $8,202 in attorney fees" is of minimal consequence as "the fact that a spouse has the means to pay his or her attorney's fees does not preclude an award for payment of the same." *Geske*, 421 S.W.3d at 498; *see also Rallo*, 477 S.W.3d at 45 ("Wife was not required to show a financial inability to pay attorney fees[.]").

Turning to the merits of Olive's claim of error, we find that the Trial Court's award of attorney's fees is supported by substantial evidence. In its judgment, the Trial Court explicitly stated that it considered the factors set forth in section 452.355. There was ample testimony of both parties' financial resources—the Trial Court reviewed their assets and debts, both marital and non-marital, and heard testimony about both parties' employment status.[13] Bitters explained that he is employed as an associate professor with a monthly income of about $6,000, and testified that Olive's yearly salary when he was working as a physician's assistant was at least $100,000.[14] Both Olive and Bitters provided testimony surrounding Olive's business, KC Fitness Link. Olive explained that he still operates this business, "earning limited money[.]"[15]

---

[13] We find Olive's claim that there was no evidence of his employment or income "at all" to be curious, in light of the testimony at trial that Olive owned and operated his own business and had recently been employed as a physician's assistant.

[14] Olive claimed at trial that he was no longer able to work in this profession due to his "criminal record," but provided no additional elaboration to support this assertion.

[15] Olive repeatedly claimed that he was "blocked from having access" to his business resulting from an order of protection obtained by Bitters that prevented him from entering the home where he insisted he had to run his business. However, other testimony indicated that Olive had a separate business location in Kansas City, Kansas.

15

The Trial Court was also free to consider the conduct of the parties throughout the pendency of the proceedings. *See, e.g.*, *Gilbert v. Koparan*, 588 S.W.3d 533, 543 (Mo. App. E.D. 2019) ("Despite the disparity in financial resources, the trial court, which is considered an expert on attorneys' fees, ultimately found Mother's conduct during the litigation to be a sufficient basis to award Father a portion of his attorneys' fees, and we find no reason to disrupt that conclusion."); *Rallo*, 477 S.W.3d at 45-46 ("Husband also takes issue with the notion that his requests for continuances . . . increased Wife's litigation costs. But Husband's conduct during the litigation is a relevant factor[.]"). As we discussed above in Point I, Olive played a significant role in delaying the progress of these proceedings. This matter was initially set for an uncontested dissolution hearing on October 5, 2021. The record shows that Olive employed four separate attorneys prior to the trial, and was granted five continuances, four of which were requested to aid each of his newly retained counsel.[16] The record further shows that Olive failed to answer interrogatories and fully comply with discovery requests, necessitating Bitters to enlist the assistance of the Trial Court to compel compliance. *See Geske*, 421 S.W.3d at 499 (Where a party's actions resulted in a significant delay in the proceeding, "such evidence provides a sufficient basis for an award of attorney fees even where the parties' financial condition does not otherwise necessitate an award of fees." (internal marks omitted)).

In addition to actions directly related to the accumulation of legal fees and the parties' actions throughout the dissolution proceeding, a trial court may also consider "a

---

[16] Olive filed motions for continuances on: October 4, 2021; May 20, 2022; August 20, 2022; September 2, 2022; and October 16, 2022.

spouse's conduct during the marriage in making its determination [about attorney's fees]." *Cosby v. Cosby*, 291 S.W.3d 795, 799-800 (Mo. App. E.D. 2009) (affirming trial court's award of attorney's fees when the trial court had evidence that "the vast majority of the wife's attorney's fees were incurred due to the conduct of the husband and his former counsel[,]" and "husband committed domestic violence during the marriage against both the wife and the parties' son, which directly contributed to the marriage's breakdown."). Bitters testified that Olive committed physical violence against him which resulted in Bitters obtaining a temporary order of protection against Olive in July of 2021. A Full Order of Protection was subsequently entered upon a finding that Bitters had "proven allegations of domestic violence, stalking, and/or sexual assault against [Olive] and [Olive] cannot show that his [] actions alleged to constitute abuse were otherwise justified under the law."

Based on the foregoing, we find the Trial Court's award of attorney's fees in favor of Bitters was supported by substantial evidence.

Point II is denied.

### Point III – Maintenance

Olive's final point on appeal contends the Trial Court erred by denying him an award of maintenance, arguing the Trial Court based its decision on a finding that Olive had "not requested maintenance from [Bitters] and that finding was not supported by substantial evidence." We agree.

"[A] party who fails to request maintenance in a pleading may not be awarded maintenance unless the pleading has been amended, the issue was tried by consent, or

17

substantial evidence relevant to the issue was introduced." *In re Marriage of Gould*, 202 S.W.3d 52, 54 (Mo. App. E.D. 2006). However, when a party does request maintenance, a trial court must follow a two-step process to determine whether an award of maintenance is appropriate. *Dowell v. Dowell*, 203 S.W.3d 271, 285 (Mo. App. W.D. 2006). First, the trial court must "analyze the evidence to find whether: (1) the party seeking maintenance lacks sufficient property, including marital property apportioned to that spouse, to provide for his or her reasonable needs; and (2) the party seeking maintenance is unable to support herself through appropriate employment." *Id*. The party seeking the award of maintenance has the burden to establish this threshold requirement. *See French v. French*, 365 S.W.3d 285, 291 (Mo. App. S.D. 2012). If the party meets its initial burden, the trial court is required to consider the factors enumerated in section 452.335.2 to determine the amount and duration of the maintenance award, balancing "the reasonable needs of the spouse seeking maintenance with the other spouse's ability to pay." *Dowell*, 203 S.W.3d at 285.

In the instant case, the Trial Court found that Olive "ha[d] not requested maintenance from the Petitioner. Respondent is not entitled to receive periodic or statutory maintenance from the Petitioner." After a thorough review of the record, we are unable to find support for this finding. Olive clearly included a request for maintenance in his Amended Counter Petition for Dissolution of Marriage, in which he alleged that he is "no longer able to support himself and therefore is requesting a reasonable sum of maintenance to be paid by the Petitioner to the Respondent." Moreover, Olive reiterated this request at trial:

A. Can I ask for maintenance during the course of this dissolution for –

18

Q. [by the Trial Court] What would be the reason for maintenance?

A. Right now, I can't work.

Q. That's civil.

A. That's still civil?

Q. Yes.

A. Okay.

Q. Are you alleging – there's two types of maintenance. You're asking because of whatever happened in this order of protection that you were negatively affected based upon -- and I want Mr. Bitters to know I am not using these words. If you felt you were wrong based upon this order of protection that was -- even if the judge signed it and what have you and you want recourse from that, that's not me. And if that is what you are asking for, that is definitely another court.

A. I'm asking for maintenance since I am not working right now and I'm mentally not in the capacity to work full-time. I'm asking for maintenance from Mr. Bitters.

Q. Why is that?

A. One, I can't work because I have that criminal background, and, two, because of the trauma of what I have incurred up until today. . . .

This exchange, coupled with Olive's unambiguous request for maintenance made in his Amended Counter Petition requires the conclusion that the Trial Court's finding that Olive "ha[d] not requested maintenance from [Bitters]" is not supported by substantial evidence. *See Dowell*, 203 S.W.3d at 287 (this Court reversing and remanding to the trial court for consideration of the factors set forth in 452.335 when the trial court incorrectly found that Wife waived her request for spousal maintenance).

19

We therefore reverse the Trial Court's finding denying Olive's request for maintenance and remand to the Trial Court to determine whether Olive established, at trial, the statutory threshold requirements of section 452.335.1—whether Olive lacks sufficient property, including marital property, apportioned to him to provide for his reasonable needs; and whether he is unable to support himself through appropriate employment. If the Trial Court finds that Olive carried this burden, it should then consider the factors set forth in section 452.335.2.

Point III is granted.

## Conclusion

The decision of the Trial Court is affirmed in part, reversed in part, and remanded for the limited purpose of considering Olive's request for maintenance in the manner outlined above.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

20